IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JASON HOLLOWAY                                                      PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 5:23-cv-00008-BWR

WARDEN SCOTT MIDDLEBROOKS, et al.                          DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER OF DISMISSAL</u>

Proceeding *pro se* and *in forma pauperis*, Plaintiff Jason Holloway filed this Complaint [2] under 42 U.S.C. § 1983 while he was housed as an inmate at the Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi. Compl. [2] at 2. Plaintiff originally named eighteen Defendants: (1) Warden Scott Middlebrooks; (2) James B. Burke, M.D.; (3) Management & Training Corporation ("MTC"); (4) Delvittia Dunmore Davis; (5) Chaplain Dewayne Anthony; (6) Deputy Warden George Castro; (7) Deputy Warden William DeRevere; (8) VitalCore Health Strategies, LLC ("VitalCore"); (9) Tiffany Ware; (10) Disciplinary Hearing Officer Shunleekee Pendleton; (11) Warden Darrell Vannoy; (12) Sergeant Joseph Hall; (13) Unit Manager Victoria Day; (14) Unit Zone Sergeant Bianca Reese (15) Nurse Eshunna Robinson; (16) Clerk Laverne Taylor; (17) Correctional Officer Ollie Boyd; and (18) Health Services Administrator Linda St. Julien. Order [1] at 2. He also named 100 unnamed Jane and John Does as Defendants. *Id.*

At an Omnibus Hearing on January 4, 2023,[1] Plaintiff voluntarily dismissed Defendants Davis, Castro, Ware, Vannoy, Hall, Day, Reese, Taylor, and Boyd. *Id.*

---

[1] The Omnibus Hearing gave Plaintiff a chance to clarify his claims. *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing"

He also advised the Court that he did not wish to proceed against the unnamed Jane and John Doe Defendants. *Id.*

Plaintiff originally pled six causes of action: (1) inadequate medical care; (2) denial of the right to practice religion; (3) denial of a prescribed medical diet; (4) denial of due process in disciplinary proceedings; (5) failure to follow policy on drug testing; and (6) denial of adequate furnishings. *Id.* at 1. Plaintiff dismissed the last two of these claims with prejudice at the Omnibus Hearing. *Id.* The Court then determined that the remaining four claims were misjoined under the Prison Litigation Reform Act ("PLRA") and Federal Rules of Civil Procedure 18 and 20. *Id.* at 4-6. The Court thus severed Plaintiff's original lawsuit (No. 5:21-cv-00063-BWR) into three separate lawsuits—one for each claim or set of related claims. *See* Order [1]. This lawsuit concerns only Plaintiff's claims of inadequate medical care and the denial of a prescribed medical diet. *Id.* at 6.

After the Omnibus Hearing, and once the case had been severed, Defendants filed Motions [17] [19] for Summary Judgment on May 19, 2023. Middlebrooks, MTC, and DeRevere ("the Correctional Defendants") filed one Motion [17], and Burke, VitalCore, Robinson, and St. Julien ("the Medical Defendants") filed the other Motion [19]. Plaintiff requested three extensions of time to respond to these Motions [17] [19], and all of his requests were granted—finally allowing him through December 15, 2023, to respond. (Text-Only Order, Dec. 1, 2023). Plaintiff has not responded.

---

to allow a *pro se* plaintiff to provide a "more definite statement"), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989). The Omnibus Hearing Transcript is available as Document 12 on the Court's docket and will be cited throughout as "(Tr.)."

After thoroughly reviewing both Motions [17] [19], along with Plaintiff's testimony at the Omnibus Hearing, the Court finds that both Motions [17] [19] for Summary Judgment should be granted in part and denied in part. Plaintiff's claims arising under federal law will be dismissed with prejudice, his claims arising under state law will be dismissed without prejudice, and this case will be closed.

## I. BACKGROUND

Plaintiff was sentenced by the Alcorn County Circuit Court on July 20, 2015, to serve a 15-year term of imprisonment for strong armed robbery. *See* Inmate Details, Jason Holloway, https://www.ms.gov/mdoc/inmate/Search/GetDetails/M0998 (last accessed Feb. 5, 2024).[2] Plaintiff was transferred from Central Mississippi Correctional Facility ("CMCF") to WCCF around February 25, 2021. Compl. [2] at 14.

### A. Inadequate Medical Care

When he arrived at WCCF, Plaintiff advised the doctors about his "medical and mental health issues." *Id.* Plaintiff claims that he is a "chronic care patient" with "asthma and seizures that have to be checked on." (Tr. 9). In March, Plaintiff also made about eight sick calls about various other issues—including a toothache, pain in his leg, psychiatric concerns, and medication-refill requests. Compl. [2] at 14-16. For example, Plaintiff testified that he has "a screw coming out of [his] leg," which is "very painful." (Tr. 18).

---

[2] The Court "may take judicial notice of matters of public record." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017).

Plaintiff saw Health Services Administrator ("HSA") St. Julien in April and Dr. Burke in June, but he is unsatisfied with the care they provided. Compl. [2] at 15-16. Plaintiff testified that Dr. Burke "tried to get" Plaintiff an appointment with an orthopedic specialist, but he did not succeed. (Tr. 18). Plaintiff also testified that he was "out [of his] medication" between February, when he arrived at WCCF, and June, when he first saw Dr. Burke. (Tr. 40).

Plaintiff directs his medical-care claim against all Defendants. Plaintiff sued the Correctional Defendants because they supervise the facility and are "responsible to make sure that [inmates] have staff to get escorted to medical." (Tr. 46). As for the Medical Defendants, Plaintiff sued VitalCore "because they employed the people that . . . ignored [his] needs." (Tr. 44). Plaintiff sued Dr. Burke and HSA St. Julien for their involvement in his treatment. And he testified that "Robinson is responsible for picking up . . . sick calls and making sure they get turned in and scheduling [inmates] to be seen by a sick call nurse." (Tr. 33). He believes that "when [Robinson] picks them up, [the sick calls] don't all get turned in." (Tr. 39).

Plaintiff claims that the "delay and inadequate medical care" at WCCF violates his Eighth Amendment rights. Compl. [2] at 17; (Tr. 36-37). He also claims that the Medical Defendants acted negligently under Mississippi state law in handling his medical issues at WCCF. (Tr. 37).

### B. Denial of Prescribed Medical Diet

Plaintiff next claims that he was denied appropriate religious accommodations during Ramadan in 2021, including the required diet, which caused him to lose a good

deal of weight.[3]  (Tr. 25).  Plaintiff testified that he "lost a lot of weight during that month" because his trays were often served after the sun came up and before the sun went down—prohibiting him from eating under Islamic custom.  (Tr. 25, 48).

After Ramadan, Plaintiff's medical providers "ordered a special diet . . . to . . . help [him] gain some [weight] back."  *Holloway v. Middlebrooks, et al.*, No. 5:21-cv-00063-BWR (Doc. 11 at 6).  The diet was ordered for nutritional support "with no corn products" because Plaintiff is allergic to corn.  *Id*.  Plaintiff claims that prison officials have failed to provide him with the prescribed medical diet.  *Id*. at 3, 6-7.  Plaintiff says that corn products still appear on his trays, forcing him to "miss several meals or portions thereof."  *Id*. at 6.  Plaintiff testified that he never received medical treatment because of this issue because he "kn[ew] better not to touch [the corn]."  (Tr. 52).  Plaintiff directs his medical-diet claim against the Correctional Defendants only.  *See* (Tr. 19, 28, 33-34).

### C. Plaintiff's Administrative Grievances

Plaintiff filed administrative grievances related to his medical care and medical diet before filing this lawsuit.  The grievance numbered "WCCF-21-348" concerns his medical care.  *See* Mot. [17-2] at 23-24.  On March 28, 2021, Plaintiff grieved that he had "filled out several sick calls" during that month and had "not been seen for any of them."  *Id*.  Plaintiff specifically raised his toothache, leg pain, psychiatric concerns, and medication-refill requests in his grievance.  *Id*.  HSA St. Julien provided a first-step response on May 18, 2021, advising that Plaintiff was

---

[3] Plaintiff's claims about the denial of his right to practice religion were severed into another lawsuit (No. 5:23-cv-00009) and will be adjudicated there.  Order [1] at 6.

seen on April 1 and apologizing for the delay. *Id.* at 20. Plaintiff elevated his grievance to the second step, alleging that he was not "receiving all [of his] med[icine]" and that his conditions were worsening. *Id.* at 22. Dr. Burke provided a second-step response on July 1, 2021, advising that Plaintiff was "seen by [him]" on June 16. *Id.* at 25.

The grievance numbered "WCCF-21-225" concerns Plaintiff's medical diet. *Id.* at 6. On March 4, 2021, Plaintiff advised that he was prescribed "a cardiac diet . . . with no corn products or grits because [he is] allergic to corn products." *Id.* Despite this instruction, he grieved that "[t]he kitchen . . . continues to send [him] trays with corn products on them." *Id.* Plaintiff received a first-step response on April 1, 2021, advising that "no corn product [was] placed on [Plaintiff's] tray as [she had] been observing." *Id.* at 7. Plaintiff elevated this grievance to the second step, allegedly because "[t]here [were] still corn products being put on [his] tray." *Id.* at 10. Warden Middlebrooks provided a second-step response on May 1, 2021, advising that Plaintiff was receiving "the correct diet tray." *Id.* at 11.

Plaintiff filed this lawsuit on July 15, 2021, *see Holloway v. Middlebrooks, et al.*, No. 5:21-cv-00063-BWR (Doc. 1)—after both grievances received second-step responses.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such

6

that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

### III. DISCUSSION

Both outstanding Motions [17] [19] for Summary Judgment will be granted in part and denied in part. The Court finds that Plaintiff arguably exhausted his

administrative remedies, but his claims still fail on the merits. Plaintiff's claims arising under federal law will be dismissed with prejudice, his claims arising under state law will be dismissed without prejudice, and this case will be closed.

### A. Plaintiff arguably exhausted his administrative remedies with respect to the claims raised here.

Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available have been exhausted."). "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *Flores v. Lappin*, 580 F. App'x 248, 249 (5th Cir. 2014) (quotation omitted). "Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir.

8

2012); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84. "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison Cnty. Adult Det. Ctr.*, No. 1:18-cv-00087-RHW, 2020 WL 980149, at *1 (S.D. Miss. Feb. 28, 2020). "The grievance process must be carried through to its conclusion before suit can be filed under the [PLRA]." *Id.* A properly exhausted claim has "complete[d] the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Mississippi law authorizes MDOC to promulgate an "administrative review procedure at each of its correctional facilities." MISS. CODE ANN. § 47-5-801. MDOC thus established a "formal two-step process for handling inmate grievances." *Yankton v. Epps*, 652 F. App'x 242, 245 (5th Cir. 2016). MDOC's Administrative Remedy Program ("ARP") is detailed in Chapter VIII of the Inmate Handbook. Mot. [19-3] at 1-2. And the Fifth Circuit summarizes the procedure like this:

> An inmate must file a grievance within 30 days of the complained-of incident. . . . The grievance is reviewed by the prison's legal-claims adjudicator and, if there is an adverse response at the first step, the inmate may proceed to step two. . . . If the inmate disagrees with the step-two response, he may sue.

*Wheater v. Shaw*, 719 F. App'x 367, 369-70 (5th Cir. 2018).

MDOC "has no specific requirement that the individual prison official be named" in the grievance. *Hayes v. Dunn*, No. 3:14-cv-00468-LRA, 2016 WL 884654, at *3 (S.D. Miss. Mar. 7, 2016). "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). "When reviewing whether the substance of a prisoner's grievance is legally sufficient for exhaustion purposes, . . . the Court asks whether the prisoner's grievance provided fair notice to prison officials about the problem that formed the basis of his suit." *Cannady v. Woodall*, No. 1:20-cv-00130-HSO-RPM, 2022 WL 2783848, at *2 (S.D. Miss. Apr. 27, 2022) (quotation and alterations omitted), *report and recommendation adopted by* 2022 WL 2345760 (S.D. Miss. June 29, 2022).[4]

Defendants argue that Plaintiff did not exhaust his administrative remedies because he failed to name them in his grievances. Mem. [18] at 8; Mem. [20] at 7. But Plaintiff's grievance numbered "WCCF-21-348" reported that he had placed many sick calls and had not been seen for various ailments. Mot. [17-2] at 23-24. His grievance numbered "WCCF-21-225" reported that he was prescribed a corn-free diet

---

[4] The Court acknowledges the contrary authority cited by the Medical Defendants. *See* Mot. [20] at 6-7 (citing *Montalto v. Shaw*, No. 3:20-cv-00822-HTW-LGI, 2023 WL 2258363, at *2 (S.D. Miss. Jan. 6, 2023), *report and recommendation adopted by* 2023 WL 2254563, at *1 (S.D. Miss. Feb. 27, 2023)). All of these cases turn on the sufficiency of the notice provided prison officials by a grievance or set of grievances. In this case, the Court finds that Plaintiff's grievances provided the necessary prison officials with proper notice of his claims. The Court does not opine on the level of notice that may be necessary to support exhaustion in another case. In any event, the Court need not resolve the tension among these cases because Plaintiff's claims fail on the merits. *See infra* Sections III(B) and III(C).

but was still receiving corn products on his trays. *Id.* at 6. These issues are the exact substance of the allegations raised here. Plaintiff "plainly gave prison officials a fair opportunity to address the problem that later formed the basis of the lawsuit." *See Cannady*, 2022 WL 2783848, at *3 (quotation and alterations omitted). The Court will decide these issues on the merits.

### B. Plaintiff's claims against the Correctional Defendants fail as a matter of law.

Plaintiff raises both of his claims against the Correctional Defendants: (1) inadequate medical care and (2) failure to provide his prescribed corn-free diet. The Correctional Defendants argue that Plaintiff's medical-care claim fails because they were not personally involved in the provision of his medical care. Mem. [18] at 7-8. They argue that his medical-diet claim fails because it does not state a constitutional violation. *Id.* at 8-9. The Court agrees with these arguments (with additional support outlined below) and will dismiss Plaintiff's federal claims against the Correctional Defendants with prejudice.

#### i. *Inadequate Medical Care*

Plaintiff clarified at the Omnibus Hearing that he is suing Middlebrooks and DeRevere in their individual and official capacities. (Tr. 15, 26). This individual-capacity claim against Middlebrooks and DeRevere is not cognizable because neither was personally involved in the alleged inadequate medical care. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). "It is well-settled that Section 1983 does not create supervisory or *respondeat superior* liability." *Burris v. Davis*, 642 F. Supp.

2d 573, 578 (S.D. Miss. 2009) (quotation omitted). "To state a cause of action under [Section] 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Id.* (quotation omitted).

At the Omnibus Hearing, Plaintiff testified that he sued Middlebrooks and DeRevere because "they're the ones responsible to make sure that [inmates] have staff to get escorted to medical." (Tr. 46). But Plaintiff's medical-care claim does not turn on a lack of escort staff. Rather, he complains that sick-call slips were not properly "turned in" to start with. (Tr. 39). And he does not fault Middlebrooks and DeRevere for failing to collect and submit the sick-call slips. *See* (Tr. 39). Thus, their only involvement—if any—in the provision of Plaintiff's medical care did not cause the alleged constitutional violation, and this individual-capacity claim must be dismissed with prejudice. *See Knight v. McGee*, No. 2:06-cv-00129-MTP, 2007 WL 3506462, at *6 (S.D. Miss. Nov. 14, 2007) (granting summary judgment to defendants where "there [was] no evidence of any personal involvement by the defendants in the alleged lack of medical care").

This official-capacity claim against the Correctional Defendants also fails. A private corporation like MTC "may be sued under § 1983 by a prisoner who has suffered an alleged constitutional injury." *Holton v. MTC*, No. 3:17-cv-00485-RHW, 2018 WL 2424427, at *2 (S.D. Miss. May 29, 2018). "Although not subject to vicarious liability for the constitutional torts of its employees, a private corporation such as [MTC] may be held liable under § 1983 when an official policy or custom of the

corporation causes, or is the moving force behind, the alleged deprivation of federal rights." *Id.* (collecting cases); *accord Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (first announcing this standard). Plaintiff must make the same showing to succeed on his official-capacity claims against Middlebrooks and DeRevere. *See Brooks v. Stringer*, No. 2:04-cv-00120-KS-MTP, 2007 WL 1087487, at *13 (S.D. Miss. Apr. 10, 2007) (evaluating an official-capacity claim against a prison warden under the *Monell* standard).

But Plaintiff does not allege that MTC has a stated policy or well-settled custom of denying or delaying appropriate medical care to inmates. Nor is any such policy or custom apparent on the face of this record. And, again, Plaintiff does not allege that Middlebrooks and DeRevere knew about his medical-care claims—much less that they sanctioned or were personally involved in denying or delaying appropriate care. Because Plaintiff has failed to make the necessary showing, his official-capacity claims against the Correctional Defendants fail as a matter of law and must also be dismissed with prejudice.

### ii.    *Failure to Provide Prescribed Diet*

"The Eighth Amendment requires that inmates be provided well-balanced meals, containing sufficient nutritional value to preserve health." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (quotation and alterations omitted). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities." *Id.* (quotations omitted). The Correctional Defendants argue that no such deprivation has occurred here:

"[Plaintiff] . . . testified that when there is corn on his tray, he can simply take the tray back and have the issue resolved." Mem. [18] at 8. But this argument ignores that Plaintiff "couldn't always get it sent back" when he "was locked down." (Tr. 52).

The Correctional Defendants' more salient argument is this: "[Plaintiff] . . . admitted that he has suffered no adverse health consequences due to the occasional placement of corn on his meal trays." Mem. [18] at 8-9. According to the Fifth Circuit, "[w]hether the deprivation of food falls below th[e] [required] threshold depends on the amount and duration of the deprivation." *Berry*, 192 F.3d at 507 (quotation omitted). Plaintiff does not claim that he was deprived of food altogether for any length of time because corn was sometimes present on his meal trays. At most, he "just [didn't] mess with [the corn]" because he "[knew] better not to touch it." (Tr. 52). "Plaintiff's disagreement with the makeup of the 'nutrition tray' does not establish a constitutional violation because he has not shown that his health suffered or that he was denied the minimal civilized measures of life's necessities." *Haynes v. Bradley*, No. 5:15-cv-00038-CWR-MTP, 2020 WL 5032047, at *5 (S.D. Miss. July 17, 2020), *report and recommendation adopted by* 2020 WL 5026865, at *1 (S.D. Miss. Aug. 25, 2020).

Moreover, Plaintiff's requested relief is unavailable because he has not alleged more than *de minimis* injuries stemming from the occasional presence of corn on his meal trays. Plaintiff testified that he wants "[i]njunctive relief and damages" in the amount of $2,000.00 to compensate for this claim. (Tr. 63). But Plaintiff is no longer

14

housed at WCCF, so any claim for injunctive relief is now moot.[5]  *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).

And Plaintiff cannot recover compensatory damages for this claim because he admitted suffering no resulting physical injury.  *See* (Tr. 52).  Under the Prison Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e).  Because Plaintiff "has failed to demonstrate that he suffered a physical injury" as a result of his medical-diet claim, the PLRA "bars his [only remaining] claim for compensatory damages." *See Pinkston v. Lee*, No. 5:22-cv-00018-KS-MTP, 2023 WL 2518914, at *3 (S.D. Miss. Jan. 20, 2023), *report and recommendation adopted by* 2023 WL 2507600, at *1 (S.D. Miss. Mar. 14, 2023).  This claim must likewise be dismissed with prejudice.  *See Meyers v. Harrison Cnty.*, No. 1:22-cv-00330-TBM-RPM, 2023 WL 3236902, at *3 (S.D. Miss. May 3, 2023).

### C.  Plaintiff's claims against the Medical Defendants fail as a matter of law.

Plaintiff raises his inadequate-medical-care claim against the Medical Defendants, along with negligence claims arising under state law.  *See* (Tr. 19, 28, 33-34, 37).  For the following reasons, his claim against each Medical Defendant fails as a matter of law.  The claims arising under federal law must be dismissed with

---

[5] Plaintiff is housed at CMCF again.  *See* Inmate Details, Jason Holloway, https://www.ms.gov/mdoc/inmate/Search/GetDetails/M0998 (last accessed Feb. 5, 2024).

prejudice, and the claims arising under state law must be dismissed without prejudice.

### i. VitalCore

The analysis about VitalCore mirrors the one for MTC. *See supra* at Section III(B)(i). That is, "Section 1983 does not create supervisory or *respondeat superior* liability." *Burris*, 642 F. Supp. 2d at 578. Thus, VitalCore cannot be held liable for denying appropriate medical care simply because it employed the individual Medical Defendants. *See Watts v. Burke*, No. 5:15-cv-00099-KS-MTP, 2016 WL 1389613, at *2 (S.D. Miss. Apr. 7, 2016) (dismissing claim against corporate prison healthcare provider that employed the doctor allegedly at fault for the plaintiff's injuries). Plaintiff testified that "the only reason that [he is] suing VitalCore is because . . . they employed the people that [he] say[s] denied [him] access to medical care." (Tr. 44). His claim against VitalCore must be dismissed with prejudice for that reason alone.

Nor does Plaintiff allege, and has not produced evidence of, any policy or custom of VitalCore to deny or delay inmates access to appropriate medical care. *See Brown v. Megg*, 857 F.3d 287, 289 (5th Cir. 2017) (affirming dismissal of claims against healthcare provider where the plaintiff did not "identify any . . . policy, practice, or custom of ignoring sick call requests"). In fact, HSA St. Julien's response to Plaintiff's grievance suggests simple negligence caused the delayed response to his sick calls. *See* Mot. [17-2] at 20. She advised that "several [of Plaintiff's] request[s]" were "found" upon a review of his medical records, and she apologized to him "for the delay." *Id*. Based on this evidence, Plaintiff cannot make the required showing under

*Monell*, and his federal claims against VitalCore must be dismissed with prejudice for this reason too.

### ii. *Dr. Burke*

To succeed against the individual Medical Defendants, Plaintiff must establish that they "act[ed] with deliberate indifference to [his] serious medical needs." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 754 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). The Fifth Circuit describes the relevant inquiry thus:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. . . . Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for serious medical needs. . . . Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. . . . And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

*Id.* at 756 (quotations, citations, and alterations omitted).

Plaintiff claims that Dr. Burke provided him with inadequate medical care in four ways, including (1) failure to arrange Plaintiff's consultation with an orthopedic specialist for his ankle injury; (2) failure to provide pain medication for his ankle injury; (3) failure to prescribe "medical shoes" for his ankle injury; and (4) failure to check Plaintiff's "Hep-C levels." Compl. [2] at 16. None of these incidents demonstrate deliberate indifference.

First, Plaintiff admitted at the Omnibus Hearing that Dr. Burke "has tried" to arrange his visit with an orthopedic specialist: "[Dr. Burke] keeps telling me that I've been scheduled to see an orthopedist, but I've not been."  (Tr. 18).  "An official is not deliberately indifferent unless he knows of and disregards an excessive risk to inmate health or safety."  *Dorton v. Freeman*, No. 2:14-cv-00140-KS-MTP, 2016 WL 783402, at *4 (S.D. Miss. Feb. 5, 2016), *report and recommendation adopted by* 2016 WL 815007, at *1 (S.D. Miss. Feb. 29, 2016).  Assuming Plaintiff's ankle injury constitutes an "excessive risk to [his] health or safety," *id.*, he cannot demonstrate that Dr. Burke *disregarded* that risk when Dr. Burke "tried" to get Plaintiff an appointment with an orthopedic specialist, (Tr. 18).  A physician is not deliberately indifferent for not ensuring that his orders have been followed.  *Gobert v. Caldwell*, 463 F.3d 339, 351 n.39 (5th Cir. 2006) (citing *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999)).  Perhaps Dr. Burke was negligent in failing to follow through with scheduling Plaintiff's orthopedic consultation, but "acts of negligence . . . or medical malpractice do not constitute deliberate indifference."  *See id.* at 346.

Moreover, Plaintiff's medical records show that he was evaluated and treated for "leg pain" at WCCF pending his visit with the orthopedic specialist.  Mot. [19-4] at 1-10.  An x-ray of the affected area was performed on June 18, 2021, and the radiologist reported "[n]o acute osseous abnormality."  Mot. [19-4] at 4.  Because "Plaintiff was treated for his medical complaints, . . . the records clearly negate any claims of deliberate indifference to his serious medical needs."  *See Turner v. Wexford*

*Health Servs.*, No. 3:08-cv-00087-LRA, 2009 WL 2245683, at *5 (S.D. Miss. July 27, 2009) (quotation omitted).

Plaintiff's medical records also contradict his claim that Dr. Burke did not "give [him] anything for the pain in [his] leg." *See* Compl. [2] at 16. Plaintiff's Medication Administration Record shows that he received 90 Tylenol tablets on March 1, 2021, at Dr. Burke's instruction. Mot. [19-4] at 10. A month later, HSA St. Julien provided Plaintiff with Naproxen for "leg pain." *Id*. at 2-3. Plaintiff then saw Dr. Burke on June 16, 2021, and the record of that visit does not show that Plaintiff requested and was denied a refill of the pain medications he had already received. *Id*. at 5-9. If Plaintiff wanted additional or different medications, his "disagreement with . . . medical treatment" does not constitute deliberate indifference. *See Gobert*, 463 F.3d at 346.

For that reason, Plaintiff's claim about his desire for "medical shoes" also fails. *See* Compl. [2] at 16. Dr. Burke's decision not to prescribe orthopedic hardware is a matter of medical judgment, and "the Court is not in a position to second-guess the medical judgment of a trained physician." *See Clark v. Banks*, No. 1:16-cv-00208-HSO-JCG, 2018 WL 1866619, at *6 (S.D. Miss. Jan. 2, 2018), *report and recommendation adopted by* 2018 WL 783075, at *3 (S.D. Miss. Feb. 8, 2018).

Finally, Plaintiff's claim that Dr. Burke once failed to test his "Hep-C levels" fares no better. When Plaintiff saw Dr. Burke on June 16, 2021, he was evaluated as a "Hepatitis Chronic Care" patient. Mot. [19-4] at 6. Dr. Burke "reviewed the appropriate labs with" Plaintiff, determined that his Hepatitis C was well-controlled,

and made a note to "get labs on return visit." *Id*. at 6, 8. At the end of his report, Dr.
Burke notes a "scheduling request" for Plaintiff's Hepatitis-C to be reevaluated in
three months. *Id*. at 8. Plaintiff's condition having been evaluated, he cannot show
that Dr. Burke acted with deliberate indifference here either. *See Allen v. Johnson*,
194 F. App'x 204, 205 (5th Cir. 2006) (finding no deliberate indifference where the
plaintiffs were treated for Hepatitis-C but argued that "the defendants . . . failed to
comply with the accepted standard of care"). Plaintiff's federal claims against Dr.
Burke fail as a matter of law and must be dismissed with prejudice.

### iii. HSA St. Julien

Next, Plaintiff claims that HSA St. Julien is liable for providing inadequate
medical care because of her supervisory role as Health Services Administrator. (Tr.
44-45). In other words, "Ms. St. Julien is the health service administrator, she's over
the medical area, [and] she's responsible if something doesn't get done." (Tr. 44-45).
At no point does Plaintiff claim that HSA St. Julien personally interfered with the
scheduling or provision of his medical treatment. Again, "Section 1983 does not
create supervisory or *respondeat superior* liability." *Burris*, 642 F. Supp. 2d at 578.

Plaintiff's only example of HSA St. Julien's personal involvement in his care is
her provision of responses to inmate grievances: "When you write a grievance, she's
the one to respond to tell you why this happened or that didn't happen, and you go to
your next step if you're not happy with the first step." (Tr. 45). But Plaintiff "does
not have a federally protected liberty interest in having [prison] grievances resolved
to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Plaintiff's

federal claims against HSA St. Julien fail as a matter of law and must be dismissed with prejudice.

### iv.  Nurse Robinson

Last, Plaintiff claims that Nurse Robinson provided inadequate medical care by failing to schedule his medical appointments with due speed.  Plaintiff believes that Nurse Robinson was responsible for picking up sick-call requests from the inmates, which she subsequently mishandled.  (Tr. 33, 39).  The Medical Defendants argue that this claim fails for lack of competent evidence to support it.  Mem. [20] at 14-16.

At the Omnibus Hearing, Plaintiff testified that "when [Nurse Robinson] picks [sick calls] up, they don't all get turned in."  (Tr. 39).  When asked whether he has "any evidence" that the sick calls were being mishandled, Plaintiff replied, "probably cameras."  (Tr. 39).  He then clarified that he did not actually "know what she did with the sick calls."  (Tr. 39).  Though the Court must draw all reasonable inferences in Plaintiff's favor at this point, "[t]here must . . . be adequate proof in the record showing a real controversy regarding material facts."  *See Burris*, 642 F. Supp. 2d at 577.  Conclusory allegations and unsubstantiated assertions are "not enough to create a real controversy regarding material facts."  *Id.*  "In the absence of proof, the court does not 'assume the nonmoving party could or would prove the necessary facts.'"  *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Despite having a chance to conduct discovery, *see* (Text-Only Order, Feb. 13, 2023), Plaintiff has adduced no evidence to suggest that Nurse Robinson mishandled

sick-call requests.  She is entitled to judgment as a matter of law, and Plaintiff's

federal claims against her will be dismissed with prejudice.

* * *

If Plaintiff claims the Medical Defendants acted negligently under state law

(Tr. 37), the Court will decline to exercise supplemental jurisdiction over these state-

law claims.  "Supplemental jurisdiction under 28 U.S.C § 1367 is discretionary and a

court may decline to exercise it when only pendent state causes of action remain in a

proceeding."  *Davenport v. HansaWorld USA, Inc.*, 23 F. Supp. 3d 679, 701-02 (S.D.

Miss. 2014).  As discussed, the Court will dismiss Plaintiff's claims arising under

federal law, and it does not have original jurisdiction over Plaintiff's claims arising

under state law. *See id*.  "Needless decisions of state law should be avoided both as a

matter of comity and to promote justice between the parties, by procuring for them a

surer-footed reading of the applicable law."  *United Mine Workers v. Gibbs*, 383 U.S.

715, 726 (1966).  Thus, Plaintiff's claims arising under state law will be dismissed

without prejudice.

## VI. CONCLUSION

Having thoroughly reviewed and liberally construed Plaintiff's pleadings and

testimony, along with the Motions [17] [19] for Summary Judgment pending, the

Court finds that Plaintiff exhausted his administrative remedies but that all claims

raised  should still be dismissed on the merits.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [17]

for Summary Judgment filed by the Correctional Defendants is **GRANTED IN**

PART AND DENIED IN PART. Plaintiff's federal claims against Warden Scott Middlebrooks, Management & Training Corporation, and Deputy Warden William DeRevere are **DISMISSED WITH PREJUDICE**. His state-law claims against the Correctional Defendants are **DISMISSED WITHOUT PREJUDICE**.

IT IS, FURTHER, ORDERED AND ADJUDGED that the Motion [19] for Summary Judgment filed by the Medical Defendants is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's federal claims against Dr. James B. Burke; Vitalcore Health Strategies, LLC; Nurse Eshunna Robinson; and Health Services Administrator Linda St. Julien are **DISMISSED WITH PREJUDICE**. His state-law claims against the Medical Defendants are **DISMISSED WITHOUT PREJUDICE**.

IT IS, FINALLY, ORDERED AND ADJUDGED that this case is closed. A separate final judgment under Federal Rule of Civil Procedure 58 will be entered contemporaneously.

**SO ORDERED AND ADJUDGED**, this the 5th day of February, 2024.

s/ *Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE

23